**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES E. PALMER,

      Petitioner,

-vs-                                    Case No.   8:18-cv-670-T-02JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Mr. Palmer, a Florida prisoner, initiated this action by filing a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1).   Upon consideration, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Doc. 3). Respondent filed a response to the petition (Doc. 9), to which Mr. Palmer replied (Doc. 14). For the reasons set forth below, the petition will be denied.

Mr. Palmer alleges nine grounds for relief in the petition:

1. trial counsel was ineffective in failing to adequately argue a motion for judgment of acquittal;

2. trial counsel was ineffective in failing to retain a medical expert to testify at trial;

3. trial counsel was ineffective in failing to adequately object to prejudicial comments by State witness Leslie Bozeman;

4. trial counsel was ineffective in failing to file a pre-trial motion to redact victim D.B.'s videotaped interview;

5. trial counsel was ineffective in failing to adequately advise him regarding the State's plea offers;

6. he was denied due process and a fair trial when the trial court denied his motion for judgment of acquittal;

7. he was denied due process and a fair trial when the trial court denied his motion for mistrial;

8. trial counsel was ineffective in failing to move for a mistrial after the State's "CPT forensic interviewer" testified that it was not unusual to see no visible evidence of penetration in these types of sexual battery cases; and

9. trial counsel was ineffective in failing to impeach State witness Detective Lopez.

## I. PROCEDURAL HISTORY

Mr. Palmer was convicted of four counts of sexual battery on a person less than 12 years of age, one count of lewd molestation, and one count of battery (Doc. 10-5, docket pp. 177-82). He was sentenced to life in prison (*Id.*, docket pp. 200-07). His convictions and sentences were affirmed on appeal (Doc. 10-2, docket p. 77).

Mr. Palmer filed a post-conviction motion pursuant to Rule 3.850, Fla.R.Crim.P., alleging ineffective assistance of trial counsel (*Id.*, docket pp. 81-120). The state post-conviction court denied some claims and ordered an evidentiary hearing on the remaining claims (*Id.*, docket pp. 122-87). After the evidentiary hearing, the state post-conviction court denied the remaining claims (Doc. 10-4, docket pp. 138-48).   The denial of the motion was affirmed on appeal (Doc. 10-5, docket p. 54).   Mr. Palmer then filed his petition for a writ of habeas corpus in this Court (Doc. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Palmer filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to

the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the

entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96.   A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.   *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."   *Bousley v. United States*, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.   *Schlup*, 513 U.S. at 327.

### III. ANALYSIS

### Ground One: Petitioner received ineffective assistance of trial counsel when his attorney failed to properly file a motion for judgment of acquittal

Mr. Palmer contends that trial counsel was ineffective in failing to adequately argue his motion for a judgment of acquittal (JOA) at the conclusion of the State's case.   He alleges that after counsel moved for the JOA and argued that the State had failed to present evidence establishing that Mr. Palmer was 18 or older at the time of the offenses, the State argued that Kelvin Bozeman's (victim D.B.'s father) testimony that Mr. Palmer was an adult, worked with him and shared living expenses, babysat for his children, and had a utility bill in his name, was sufficient evidence proving Mr. Palmer was 18 or older. Mr. Palmer argues that trial counsel should have responded that Kelvin Bozeman never testified that Mr. Palmer was an adult, parents have been known to put utilities in their children's names, and people under the age of 18

can babysit, work, and share living expenses.   He further argues that had trial counsel "more adequately argu[ed] his JOA motion the outcome of Petitioner's case would have been different. . . ."

    This claim was raised in state court in Ground Nine of Mr. Palmer's Rule 3.850 motion (Doc. 10-2, docket pp. 100-01).   In denying the claim, the state post-conviction court stated:

> In claim 9, the Defendant asserts that trial counsel provided ineffective assistance of counsel for failing to renew and more thoroughly argue a motion for judgment of acquittal. As the Defendant indicates in his Motion, trial counsel did move for a judgment of acquittal at the end of the State's case on the grounds that the State had not established the Defendant's age, an element of the offenses. (See transcript, attached, pp. 390-394) The trial court denied the motion. The Court cannot find any basis to believe that the trial court's ruling would have been different had the motion been argued differently. Although trial counsel did not renew his motion at the end of the trial, as the Defendant points out, during cross-examination of the Defendant the Defendant was asked his age and he responded. This question was not beyond the scope of direct examination as suggested by the Defendant. (See transcript, attached, pp. 396-398). The Defendant was asked on direct examination if he had lived in Polk County his whole life and a logical question on cross-examination might involve the Defendant's age.   Given the Defendant's answer as to his date of birth during cross-examination, the Court finds any renewed motion for judgment of acquittal based on a lack of proof of the Defendant's age would have been meritless. Trial counsel cannot be found ineffective for failing to raise a meritless claim. Accordingly, **claim 9 is DENIED**.

(Doc. 10-2, docket pp. 124-25).

    The state post-conviction court found that had defense counsel responded to the State's arguments in the manner Mr. Palmer argues counsel should have responded, the motion for a JOA still would have been denied.   The state post-conviction court therefore concluded that Mr. Palmer failed to show deficient performance.

    Whether the evidence presented in a state criminal trial is sufficient to establish the elements of the crime to withstand a judgment of acquittal is a matter of state law.   *See Bucklon v. Crosby*, 2006 WL 2990449, at *3 (M.D.Fla. Oct. 19, 2006) (citing *Lynch v. State*, 293 So.2d

44, 45 (Fla.1974)) ("Under Florida law, the state trial court should not grant a motion for judgment of acquittal unless the evidence is such that no view in which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.").   Although Mr. Palmer contends that the State failed to present sufficient evidence that he was 18 at the time of the offenses because an individual under the age of 18 can babysit children, share living expenses with an adult, and have a utility account established in his name, he provides no evidence in support of the contention.   Moreover, the determination of whether Kelvin Bozeman's testimony provided sufficient evidence of Mr. Palmer's age to overcome the motion for judgment of acquittal is a matter of state law solely within the province of the state court. *See Bucklon*, 2006 WL 2990449, at *3 (petitioner's claim that trial court erroneously denied his motion for judgment of acquittal was a matter of state law not cognizable on federal review). This Court cannot reexamine the state court's determination of state-law questions.

The state post-conviction court therefore has answered the question of what would have happened had defense counsel responded to the State with the arguments Mr. Palmer contends counsel should have made – the JOA would have been denied. Consequently, Mr. Palmer has failed to establish deficient performance and prejudice.   *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).[2]

Mr. Palmer has failed to show that the state court's denial of this claim involved an

---

2 The Court notes that Mr. Palmer's testimony, during the defense's case, established that he was over the age of 18 at the time he committed the offenses (Doc. 10-7, docket p. 225).

unreasonable application of *Strickland* or was based on an unreasonable determination of the

facts. Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two: Petitioner received ineffective assistance of trial counsel when his attorney failed to obtain and use a medical expert at trial.**

Mr. Palmer contends that counsel was ineffective in failing to retain and call at trial a

medical expert to testify that D.B.'s accusation that Mr. Palmer inserted his penis into D.B.'s

anus numerous times over a one-year period was "medically impossible" considering the Child

Protection Team's ("CPT") examination of D.B. revealed no physical evidence of injury.   This

testimony, Mr. Palmer argues, would have diminished the credibility of D.B.'s accusations

against him.

This claim was raised in state court in Ground Five of Mr. Palmer's Rule 3.850 motion

(Doc. 10-2, docket pp. 93-94).   In denying the claim, the state post-conviction court stated:

> In claim 5, the Defendant asserts that trial counsel provided ineffective
> assistance of counsel for failing to obtain the appointment of an expert
> proctologist to review medical examinations of the victim, D.B.
>
> At the evidentiary hearing, trial counsel testified that he considered the
> testimony of a proctologist, but decided against such a strategy.   Trial counsel
> testified that D.B. was examined shortly after the allegations came to light and no
> anal injury to D.B. was observed. The results of the exam was [sic] referenced at
> the trial and argued by trial counsel. (See transcript, attached, p. 425). At the time
> of trial counsel's representation of the Defendant a good deal of time had passed
> since the alleged abuse and the original examination. Therefore, trial counsel had
> no reason to believe the findings of another examination would be any different
> than the original examination. Additionally, trial counsel believed it was doubtful
> that under the circumstances the trial court would approve of a rectal examination
> of the minor victim in this case. The Court finds this was a matter of sound trial
> strategy by trial counsel. Accordingly, claim 5 is DENIED.

(Doc. 10-4, docket p. 144).

Initially, Respondent contends that this claim is unexhausted because Mr. Palmer did not

raise it on collateral appeal.   *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In

Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."); *Boerckel,* 526 U.S. at 845 (the exhaustion doctrine requires that a prisoner give the state courts a full opportunity to resolve a federal constitutional claim "by invoking one complete round of the State's established appellate review process.").   The Court agrees because Mr. Palmer did not identify or discuss this claim in his collateral appellate brief (Doc. 10-4, docket pp. 152-201).

Mr. Palmer cannot return to state court to present the claim because state procedural rules do not provide for second collateral appeals. See Fla. R. Crim. P. 3.850(k) (stating that an appeal from a final order denying postconviction relief may be taken within 30 days of the rendition of the order).   Accordingly, this claim is procedurally defaulted.

Mr. Palmer has not established the cause and prejudice exception to procedural default. Nor has he argued or established that he meets the fundamental miscarriage of justice exception. Accordingly, Ground Two is procedurally defaulted and barred from federal habeas review.

Even if the claim were not procedurally defaulted, it would fail on the merits.   Mr. Palmer's contention that a medical expert would have testified that D.B.'s allegation that Mr. Palmer inserted his penis into D.B.'s anus numerous times over a one-year period is "medically impossible," considering the examination of D.B. (approximately one year later) revealed no signs of injury, is purely speculation. Mr. Palmer has not offered any evidence establishing that a medical expert would have provided such testimony. Self-serving speculation as to the testimony an expert witness might have provided fails to provide a basis on which to conclude that a petitioner's counsel performed deficiently. *See United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir.1984) ("[T]o successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness

testimony.").

In sum, Ground Two is procedurally barred from review, and Mr. Palmer has established neither deficient performance nor prejudice.   Accordingly, Ground Two is denied pursuant to Section 2254(d).

**Ground Three: Petitioner received ineffective assistance of trial counsel when his attorney failed to object properly to several highly prejudicial comments made by State witness, Leslie Bozeman**

Mr. Palmer alleges that D.B.'s aunt, Leslie Bozeman, provided testimony that: 1) served solely to bolster her and D.B.'s credibility; 2) attacked Mr. Palmer's character; and 3) violated Mr. Palmer's right to confront his accuser, Leslie Bozeman's husband. Specifically, Mr. Palmer first asserts that when Leslie Bozeman was asked if she knew whether D.B. made up stories, she answered that he only made up "kids' fibs" and nothing "extravagant." After defense counsel objected, the court ruled that the testimony was permissible if the State could "lay a foundation by eliciting testimony that would put Leslie in a position to vouch for [D.B.'s] credibility." Mr. Palmer argues that Leslie Bozeman could not vouch for D.B.'s credibility because she testified that she was unaware that D.B. had falsely accused his father of beating a door down with a baseball bat, an accusation that D.B.'s mother had testified D.B. falsely made. And since Leslie Bozeman was unable to establish that she could vouch for D.B.'s credibility, Mr. Palmer contends counsel was ineffective in failing to move for a mistrial.

Next, Mr. Palmer asserts that Leslie Bozeman testified that she heard Mr. Palmer say that D.B. had a "big one," which she believed meant D.B.'s penis, and she and her husband heard Mr. Palmer say that he was gay.   He argues that this testimony was highly prejudicial because it allowed the jury to consider his sexual orientation, bolstered D.B.'s credibility, and violated his right to confront Leslie Bozeman's husband.   Mr. Palmer contends that counsel was ineffective

because he objected to this testimony solely on the ground that it was hearsay, an objection with "no legal support whatsoever."

Finally, Mr. Palmer alleges that Leslie Bozeman testified that on one occasion Mr. Palmer "came on to her" while he was drunk and beat on her bedroom door while she was inside the room with her children.   He argues that the testimony was highly prejudicial because it was irrelevant to the charges against him and served only to attack his character.   He contends that although counsel objected to the testimony and moved for a mistrial, and the court gave a curative instruction to the jury, counsel was ineffective in failing to preserve the issue for appeal by failing to renew the motion for mistrial after the curative instruction was given.

These claims, or similar claims, were raised in state court in Grounds Twelve, Fifteen, and Seventeen of Mr. Palmer's Rule 3.850 motion (Doc. 10-2, docket pp. 104-05; 108-12).   The claims presented to the state post-conviction court were denied as follows:

> In claim 12, the Defendant asserts that trial counsel provided ineffective assistance of counsel for failing to renew a motion for mistrial when witness [] offered objectionable testimony at trial. The record reflects that trial counsel did object to the testimony of [] concerning uncharged bad acts and requested a mistrial. The trial court sustained the objection, but would not grant a mistrial. The trial court gave a curative instruction. Trial counsel argued that a curative instruction was insufficient and requested a mistrial. The trial court denied the request for a mistrial. (See transcript, attached, pp. 247-252).   The Court finds that trial counsel was not ineffective in this regard. Accordingly, **claim 12 is DENIED**.
>
> ***
>
> In claim 17, the Defendant asserts that trial counsel provided ineffective assistance of counsel for failing to object [sic] testimony bolstering the credibility of victim, D.B., through the witness []. The Court has reviewed the portions of the testimony of [] and referenced by the Defendant in his Motion concerning this claim. (See transcript, attached, pp. 236-239 and pp. 242-244) As the Defendant indicates in his Motion, trial counsel did object to the testimony of [] that the Defendant characterizes as bolstering the credibility of victim []. The trial court allowed the questioning if a foundation was laid. The State continued with its

questioning after laying the foundation indicated by the trial judge. The Court can find no reason to find trial counsel ineffective. Trial counsel had objected and the trial court considered the objection.    Accordingly, **claim 17 is DENIED.**

(Doc. 10-2, docket p. 125).

In claim 15, the Defendant asserts that trial counsel provided ineffective assistance of counsel for failing to depose [] and object to their testimony at trial. At trial, the State elicited testimony from [] that the Defendant had stated that D.B. had a "big one" and the [sic] he, the Defendant, was gay. Trial counsel objected to the testimony and requested a mistrial. The trial judge sustained the objection, denied a mistrial, and gave a curative instruction to the jury. (See transcript, attached, pp. 244-252) Trial counsel also moved for a new trial based on the comments of []. Record documents indicate that the trial court's denial of a new trial was an issue of the Defendant's appeal of his judgment and sentence which was affirmed by the Second District Court of Appeal. (See attachments)

The Defendant asserts that trial counsel was ineffective in failing to depose [].   He asserts that had he deposed [] he would have been able to discredit [] testimony concerning the Defendant's [sic] that D.B. had a "big one." However, it is unclear how any deposition of [] would have aided trial counsel. The Defendant's claim is based on speculation as to what the depositions would have disclosed as to the alleged comments of the Defendant to [].   It is clear that, when the State elicited the objectionable testimony from [] trial counsel made timely objections to the testimony and requested a mistrial. A curative instruction was given. The Court finds trial counsel was not ineffective as alleged by the Defendant.

Additionally, the Court finds that, even if the Court were to find trial counsel ineffective, any ineffectiveness as alleged by the Defendant did not result in prejudice to the Defendant such that the Court can find that the result of the trial probably would have been different. (See the Court's analysis regarding claim 4, above) This is particularly true in that the trial court gave a curative instruction concerning [] objectionable testimony. Based on the above, **claim 15 is DENIED**.

(Doc. 10-4, docket p. 147).[3]

**1. Mr. Palmer's claim that counsel was ineffective in failing to move for a mistrial after Leslie Bozeman testified that D.B. did not make up stories as a child is both procedurally barred and without merit**

To the extent that Mr. Palmer contends in Ground Three that counsel was ineffective in

failing to move for a mistrial after Leslie Bozeman testified that she never heard D.B. make up stories other than "kid fibs", and the State failed to lay a proper foundation for admission of the testimony, the claim never was presented to the state courts.   In Ground Seventeen of Mr. Palmer's Rule 3.850 motion, he claimed that after counsel objected to this testimony, he was ineffective in failing to renew the objection after the State failed to lay a proper foundation (Doc. 10-2, docket pp. 110-12).   He argued that the failure to renew the objection deprived him a curative instruction respecting the testimony (*Id.*, docket p. 112).   Therefore, it is apparent that Mr. Palmer did not present the state post-conviction court with the same claim he now presents to this Court (counsel's failure to move for a mistrial).   Accordingly, this part of Ground Three is procedurally barred.   *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("[I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts *with the same claim he urges upon the federal courts*.'") (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (emphasis added).   And even if the claim presented to the state post-conviction court were construed as the same claim presented in Mr. Palmer's federal habeas petition, it would remain procedurally barred because it was not presented to the state appellate court on appeal from the denial of the Rule 3.850 motion (Doc. 10-4, docket pp. 151-201).   *See O'Sullivan*, 526 U.S. at 845 (1999) (before presenting a claim to the federal courts, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Mr. Palmer fails to allege or show cause and prejudice for the default of this claim.   And he cannot meet the "fundamental miscarriage of justice" exception because he presents no "new

---

3  The names of the witnesses were redacted in the order.

reliable evidence" that he is actually innocent.   *Schlup*, 513 U.S. at 327.   Because he satisfies neither exception to procedural default, this claim is procedurally barred from federal review.

Even if the claim were not procedurally barred it would fail on the merits.   Although an ineffective assistance of counsel claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . .we must defer to the state's construction of its own law."   *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).   The validity of the renewed objection or motion for a mistrial that Mr. Palmer contends defense counsel should have made, *i.e.*, failure to lay a proper foundation, is a question of state evidentiary law.   The state post-conviction court already answered the question of whether that was a valid basis, under state law, for renewing the objection to Leslie Bozeman's testimony—it was not (Doc. 10-2, docket p. 125).   This Court must defer to the state post-conviction court's determination of state law.   Therefore, counsel's failure to make the objection or motion for a mistrial that Mr. Palmer contends he should have made (failure to lay a proper foundation) cannot be considered deficient performance.   Moreover, Mr. Palmer cannot show he was prejudiced by counsel's failure to renew his objection or move for a mistrial because the objection and motion for mistrial would not have been successful.

In sum, this part of Ground Three is procedurally barred from review.   Moreover, to the extent the claim may be construed as raising the same claim presented to the state post-conviction court, Mr. Palmer has failed to show that the denial of the claim was contrary to or an unreasonable application of *Strickland*.   Accordingly, he is not entitled to relief on this sub-claim.

**2. Mr. Palmer's claim that counsel was ineffective in objecting to Leslie Bozeman's testimony that Mr. Palmer said he was gay and that D.B. had a "big one" solely on the ground that it was hearsay is both procedurally barred and without merit**

To the extent that Mr. Palmer contends in Ground Three that counsel was ineffective in objecting solely on the ground of hearsay to Leslie Bozeman's testimony that Mr. Palmer said he was gay and that D.B. had a "big one," the claim never was presented to the state courts.   In Ground Fifteen of Mr. Palmer's Rule 3.850 motion, he alleged that counsel was ineffective in failing to: 1) depose Leslie Bozeman and her husband; and 2) object to Leslie Bozeman's testimony (Doc. 10-2, docket pp. 108-09).   He did not allege that counsel was ineffective in objecting to the testimony solely as hearsay (*Id.*).   Therefore, it is apparent that Mr. Palmer did not present the state post-conviction court with the same claim he now presents to this Court. Accordingly, this part of Ground Three is procedurally barred.   *See McNair v. Campbell*, 416 F.3d at 1302.   And even if the claim presented to the state post-conviction court were construed as the same claim presented in the federal habeas petition, it would remain procedurally barred because it was not presented to the state appellate court on appeal from the denial of the Rule 3.850 motion (Doc. 10-4, docket pp. 151-201).[4]   *See O'Sullivan*, 526 U.S. at 845.   Mr. Palmer fails to show cause and prejudice for the default of this claim, and he fails to meet the "fundamental miscarriage of justice" exception.

Even if the claim were not procedurally barred it would warrant no relief.   "A failure to object does not constitute deficient representation unless a sound basis exists for objection." *Leonard v. Dretke*, 2005 WL 3543348, at *14 (N.D. Tex. Dec. 22, 2005) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997) (noting that a futile or "meritless objection cannot be grounds for a finding of deficient performance").   Mr. Palmer has failed to show that there was

---

4 In his Initial Brief, Mr. Palmer argued that the state post-conviction court erred in finding that counsel had objected to Leslie Bozeman's testimony that Mr. Palmer said he was gay and that D.B. had a "big one" (Doc. 10-4, docket pp. 192-93).   He did not, however, present a claim that counsel was ineffective in objecting to the testimony solely as hearsay (*Id.*).

a sound basis for counsel to object to Leslie Bozeman's testimony.   And even if there was a basis to object, Mr. Palmer has failed to show deficient performance and prejudice.

Concerning the testimony that Mr. Palmer said D.B. has a "big one," Mr. Palmer suggests no basis for an objection.   With regard to the testimony that Mr. Palmer said that he was gay during a conversation with Leslie Bozeman's husband, it appears the testimony may have been improper under Florida law.   *See, e.g., Wessel v. State*, 968 So. 2d 634 (Fla. 2d DCA 2007) (evidence regarding defendant's sexual orientation was irrelevant and prejudicial in prosecution for lewd and lascivious molestation of child).   Nevertheless, after Leslie Bozeman testified that Mr. Palmer joked that he was gay and "came for [her]" while he was drunk and banged on her bedroom door, counsel objected "to this whole line of questioning" and moved for a mistrial (Doc. 10-7, docket pp. 52-54).   Although the motion for mistrial was denied, the court instructed the jury to "disregard any testimony concerning any transactions or dealings between the defendant and [Leslie Bozeman]. . . ."   (*Id.*, docket pp. 56-57).   Moreover, during cross-examination counsel got Leslie Bozeman to admit that Mr. Palmer said he was "just joking, just kidding" after he said that he was gay (*Id.*, docket p. 58).   Therefore, counsel effectively challenged Leslie Bozeman's testimony on the issue.

Even if counsel were deficient in addressing the testimony Mr. Palmer fails to show prejudice.   This Court has carefully reviewed the transcript of Mr. Palmer's trial to determine whether there was a "reasonable probability" that the outcome would have been different but for Leslie Bozeman's testimony regarding Mr. Palmer's comment that he was gay.   The comment did not become a feature of the trial.   Moreover, the impact of the comment was diminished when Leslie Bozeman testified that Mr. Palmer said he was only joking when he said he was gay.   And no other evidence was presented that indicated Mr. Palmer was homosexual.   In

fact, other evidence implied that Mr. Palmer was not homosexual, including D.B.'s statement that his father and Mr. Palmer were going to pay two women to have sex with them.   Finally, D.B.'s testimony regarding the sexual batteries was strong evidence of Mr. Palmer's guilt because it was consistent with his prior statement to the CPT interviewer and provided a detailed and graphic account of the sexual acts, especially for someone his age.   Accordingly, Mr. Palmer has not shown a "reasonable probability" that the outcome of his trial would have been different but for Leslie Bozeman's testimony.

Lastly, Mr. Palmer implicitly contends that counsel was ineffective in failing to object to Leslie Bozeman's testimony because it violated Mr. Palmer's right to confront his accuser. The contention appears premised on Leslie Bozeman's testimony that she heard Mr. Palmer tell her husband that he was gay, and that counsel could not examine Leslie Bozeman's husband regarding the statement because he did not testify during the trial.

The Confrontation Clause of the Sixth Amendment bars admission of testimonial statements of a witness who does not appear at trial unless he is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). The Confrontation Clause therefore does not apply here because no statement from Leslie Bozeman's husband was presented during Mr. Palmer's trial. Rather, Leslie Bozeman testified that she heard *Mr. Palmer* tell her husband that Mr. Palmer was gay (Doc. 10-7, docket pp. 51-52). Accordingly, counsel was not ineffective in failing to make a Confrontation Clause objection.

In sum, this part of Ground Three is procedurally barred from review. Moreover, Mr. Palmer has failed to show deficient performance and prejudice.   Accordingly, he is not entitled to relief on this sub-claim.

**3. Mr. Palmer's claim that counsel was ineffective in failing to renew his motion for mistrial after the court gave a curative instruction on Leslie Bozeman's testimony that Mr. Palmer "came for her" while he was drunk is both procedurally barred and without merit**

Mr. Palmer lastly contends in Ground Three that counsel was ineffective in failing to renew his motion for mistrial after the court gave a curative instruction on Leslie Bozeman's testimony that Mr. Palmer "came for her" once while he was drunk and banged on her bedroom door.   He argues that although counsel moved for a mistrial before the court gave a curative instruction, the failure to renew the motion after the instruction was given prejudiced him because the denial of the motion was not preserved for appellate review.

This claim was presented in state court in Ground Twelve of Mr. Palmer's Rule 3.850 motion (Doc. 10-2, docket pp. 104-05).   It was not, however, presented to the state appellate court on appeal from the denial of the Rule 3.850 motion (Doc. 10-4, docket pp. 151-201). Accordingly, this part of Ground Three is procedurally barred.   *See O'Sullivan*, 526 U.S. at 845 (1999) (before presenting a claim to the federal courts, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").   Mr. Palmer fails to allege or show cause and prejudice for the default of this claim, and he fails to meet the "fundamental miscarriage of justice" exception.

Even if the claim were not procedurally barred it would warrant no relief.   Neither in state court nor in this federal habeas proceeding has Mr. Palmer presented any argument or case law supporting his contention that the denial of the motion for mistrial was not preserved for appellate review because counsel failed to renew the motion after the court gave a curative instruction. Self-serving, conclusory allegations are insufficient to establish ineffective assistance of counsel. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (vague, conclusory, or

unsupported allegations cannot support an ineffective assistance of counsel claim). Counsel objected to Leslie Bozeman's testimony that Mr. Palmer "came for her" while he was drunk, and the objection was sustained. Counsel then moved for a mistrial. Although the motion was denied, the court instructed the jury to not consider Leslie Bozeman's testimony. Therefore, counsel adequately challenged Leslie Bozeman's testimony. Accordingly, the state post-conviction court's determination that counsel was not ineffective (Doc. 10-2, docket p. 125) was not objectively unreasonable.

In sum, this part of Ground Three is procedurally barred from review. Moreover, Mr. Palmer has failed to show that the state post-conviction court's denial of the claim was contrary to or an unreasonable application of *Strickland*. Accordingly, he is not entitled to relief on this sub-claim. Ground Three therefore warrants no relief.

**Ground Four: Petitioner received ineffective assistance of trial counsel when his attorney failed to file a pretrial motion to redact [D.B.'s] videotaped interview**

Mr. Palmer alleges that during trial a videotaped statement of D.B. was played for the jury. The video included a statement from D.B. that his father and Mr. Palmer were going to pay women for sex. Mr. Palmer argues that this statement was irrelevant and prejudicial, and therefore counsel was ineffective in failing to move to redact the statement from the video.

Initially, Respondent correctly argues that this claim is procedurally barred from review because Mr. Palmer did not raise if on collateral appeal (Doc. 10-4, docket pp. 152-201). Mr. Palmer cannot return to state court to present the claim because state procedural rules do not provide for second collateral appeals. See Fla. R. Crim. P. 3.850(k) (stating that an appeal from a final order denying postconviction relief may be taken within 30 days of the rendition of the order). Accordingly, this claim is procedurally defaulted.

Mr. Palmer has not established the cause and prejudice exception to procedural default. Nor has he argued or established that he meets the fundamental miscarriage of justice exception. Accordingly, Ground Four is procedurally defaulted and barred from federal habeas review.

Even if the claim were not procedurally defaulted it would fail on the merits. Mr. Palmer contends that counsel should have moved to redact the following exchange between D.B. and the CPT interviewer during D.B.'s videotaped statement:

> MS. BEARDEN:   Have you ever seen James do any of these things to anyone else?
>
> MR. BOZEMAN:   No.
>
> MS. BEARDEN:   Have you ever heard of James doing these things to anyone else?
>
> MR. BOZEMAN:   All I know is him and his -- him and my dad had two girls over.   They was [sic] going to pay them for -- to have sex with them.
>
> MS. BEARDEN:   How do you know that?
>
> MR. BOZEMAN:   Because, because my dad, he was talking on the phone, and all I heard, he said going to come over and -- (inaudible.)   And he said, I'll pay you something, I don't know, and then after that, and then they came over there, and then I went to the bathroom and I heard her talking about- her doing some noise.
>
> MS. BEARDEN: Like what?
>
> MR. BOZEMAN: Like screaming.
>
> MS. BEARDEN: Why was she screaming?
>
> MR. BOZEMAN: Because my dad was doing something.
>
> MS. BEARDEN: Did you see what they were doing?
>
> MR. BOZEMAN: No.

(Doc. 10-7, docket pp. 202-03).

Even if trial counsel was deficient in failing to move to redact this portion of the videotaped statement, Mr. Palmer cannot show that this error was so prejudicial that there was a reasonable probability that but for the error, the outcome of the proceeding would have been different.   Mr. Palmer provides no evidence that but for the admission of this statement, the outcome of trial would be different.   D.B.'s statement that on one occasion his father and Mr. Palmer paid two women to have sex had, at best, a minor role in the trial.   Indeed, apart from the one brief reference to the matter on the videotaped statement, neither the judge nor any party appears to have referred to the matter during the trial (Docs. 10-6, 10-7).   And there was ample evidence at trial to incriminate him, including D.B's detailed testimony regarding the sexual abuse that was consistent with his statement during the CPT interview.

In sum, Ground Four is procedurally barred from review, and Mr. Palmer has not established prejudice from D.B.'s statement.   Accordingly, Ground Four is denied pursuant to Section 2254(d).

**Ground Five: Petitioner received ineffective assistance of trial counsel when his attorney failed to properly convey favorable plea offers**

Mr. Palmer contends that although counsel conveyed three separate plea offers to him from the State, counsel was ineffective in failing to inform him: 1) that he was facing mandatory life sentences if he proceeded to trial and lost; 2) of the specific testimony the State planned on offering at trial; and 3) that he would easily be convicted at trial.   He asserts that had counsel advised him of this information, he would have accepted the first plea offer of 10 years in prison followed by 15 years on probation.

A similar claim was raised in state court in Ground One of Mr. Palmer's Rule 3.850 motion (Doc. 10-2, docket pp. 83-84).   There, he alleged that counsel was ineffective in failing

to inform him that he was facing a mandatory life sentence if he lost at trial and probably would lose if he proceeded to trial (*Id*.).   The state court granted an evidentiary hearing on this and other claims (Doc. 10-4, docket pp. 2-136).   During the evidentiary hearing, Mr. Palmer testified that although counsel notified him of the State's plea offers, counsel failed to inform him of the maximum possible penalties and instead only told him that he was "facing a lot of time" in prison if he lost at trial (Doc. 10-4, docket p. 13).   He further testified that counsel offered no advice regarding whether it was better to accept the offers or proceed to trial (*Id*., docket p. 14).   Finally, he testified that he would have accepted an offer from the State had counsel informed him of the maximum penalties he was facing (*Id*., docket pp. 14-15).   On cross-examination, Mr. Palmer admitted that counsel told him that he could be convicted "on word alone."   (*Id*., docket p. 48).   He testified that although he knew the charges were serious, he never thought to ask counsel how much prison time he was facing (*Id*., docket pp. 49-51). Finally, he testified that he wanted to go to trial and prove his innocence (*Id*., docket pp. 51, 53-54).

Counsel testified at the evidentiary hearing that he explained to Mr. Palmer that the offenses were punishable by "mandatory life sentences."   (*Id*., docket p. 93).   He further testified that although he and Mr. Palmer discussed the plea offers, the discovery, the accusations, the depositions, the investigation of witnesses, and the timeline, Mr. Palmer was not interested in discussing counteroffers and wanted to proceed to trial (*Id*., docket p. 97).

In denying the claim, the state post-conviction court stated:

> In claim 1, the Defendant asserts that trial counsel provided ineffective assistance of counsel for failing to properly convey plea offers.   At the evidentiary hearing, the Defendant testified that, while trial counsel advised him of three plea offers, trial counsel failed to advise him of the maximum punishment he was facing if he declined the plea offers. Despite indicating that he would have

accepted the offers if he had been advised of the maximums, he testified that he failed to ask trial counsel of the maximum he was facing on all three occasions. He also testified that he wanted to prove his innocence at trial.

Trial counsel testified that he did advise the Defendant of the maximum he was facing should he decline the plea offers and go to trial.   He testified that he had an independent recollection of advising the Defendant of the maximum punishment while conveying the first plea offer and believed he had done so on all three occasions based on his routine practice of doing so.

The Court found trial counsel's testimony more credible than the Defendant's relative to claim 1. The Defendant was facing a maximum of life in prison in this case and the Court found the testimony of the Defendant in regard to claim 1 highly incredible. Accordingly, claim 1 is DENIED.

(Doc. 10-4, docket p. 141).

The record supports the state post-conviction court's finding that Mr. Palmer failed to establish ineffective assistance of counsel.    Counsel testified that he informed Mr. Palmer of the maximum sentences and that despite discussing the State's offers and the issues in the case, Mr. Palmer wanted to proceed to trial and prove his innocence.   The state court's findings that counsel's testimony was credible and Mr. Palmer's testimony was "highly incredible" are presumed correct.   *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir.1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].")*, cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir.1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are ... entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).")*, cert. denied*, 513 U.S. 1161 (1995).   And Mr. Palmer has not overcome, by clear and convincing evidence, the presumption of correctness afforded the state court's credibility finding.

Even if counsel were deficient, Mr. Palmer has failed to establish prejudice.   To

establish prejudice in these circumstances, Mr. Palmer must demonstrate a reasonable probability that he would have accepted the first plea offer of 10 years in prison followed by 15 years on probation but for counsel's alleged failure to adequately advise Mr. Palmer.[5]   *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (holding that to show prejudice in the context of a foregone guilty plea, a petitioner must show, *inter alia*, that, but for the ineffective assistance of counsel, there is a reasonable probability that he would have accepted the plea offer).   Mr. Palmer testified at the evidentiary hearing that it was always his intention to go to trial, and he wanted to proceed to trial to prove his innocence (Doc. 10-4, docket p. 51).   This was his intention despite counsel allegedly telling him that he "was facing a lot of time" in prison if he proceeded to trial and lost (*Id.*, docket p. 13).   And counsel testified that Mr. Palmer was not interested in discussing counteroffers and always wanted to proceed to trial (*Id.*, docket p. 97).   Although Mr. Palmer now contends that he would have accepted the State's first offer had counsel properly advised him, his contention, without more, is insufficient to demonstrate prejudice. *See Cook v. United States*, 189 F. App'x 927, 929 (11th Cir. 2006) ("We have held that 'after the fact testimony concerning [a] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice ... he would have accepted the plea offer.'") (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.1991) (alteration in original)).

Mr. Palmer has failed to show that the state court's denial of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.   Accordingly, Ground Five does not warrant federal habeas relief.

**Ground Six: Petitioner was denied his constitutional rights to due process and a fair trial when the trial judge denied his motion for judgment of acquittal**

---

5 Mr. Palmer does not allege that he would have accepted either the second or third plea offer.

26

Mr. Palmer contends that he was denied due process and a fair trial when the court denied his JOA at the conclusion of the State's case.   He argues that the JOA should have been granted because the State failed to present sufficient evidence that he was 18 years or older, an element of each charge against him.   In state court, Mr. Palmer challenged the denial of his JOA in his Amended Initial Brief on direct appeal (Doc. 10-2, docket pp. 18-20).

Respondent correctly argues that any federal constitutional claim Mr. Palmer is attempting to raise is procedurally barred. In his Amended Initial Brief on direct appeal, he argued that the trial court committed "reversible error" in denying his JOA (*Id.*).   He cited solely to state case law to support his argument (*Id.*).   He did not present the federal constitutional nature of his claim because he did not indicate in any way that the denial of his JOA violated his rights under federal law (*Id.*).   *See Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir.2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard). Accordingly, this claim is procedurally defaulted because the Florida courts would now refuse to hear his federal constitutional claim.

Mr. Palmer shows neither cause and prejudice nor manifest injustice to overcome the procedural default.   Ground Six is therefore procedurally barred from review.

Even if the claim were not procedurally barred it would fail on the merits.   In a sexual battery case in Florida, the age of the defendant may be proven by circumstantial evidence.   *See State v. Surin*, 920 So. 2d 1162, 1164 (Fla. 3d DCA 2006) ("[T]he State can meet its burden of proof of defendant's age through the use of circumstantial evidence in a sexual battery case."). The State presented circumstantial evidence that Mr. Palmer was 18 or older at the time of the

27

offenses, namely, Kevin Bozeman's testimony that he and Mr. Palmer shared living expenses, Mr. Palmer watched his children while he was at work, and Mr. Palmer had the electric bill in his name. *See Surin*, 920 So. 2d at 1165 (finding that "the circumstantial evidence presented in this case was sufficient to support the jury's verdict that the defendant was eighteen years of age or older at the time of the offense" where the jury was able to observe the defendant during the case, the defendant married the victim's mother the year before the offense, he cared for his wife's children while she was at work, the victim referred to the defendant as "daddy," defendant entered the country without his parents or another family member, and his wife referred to him as an adult).   Whether this circumstantial evidence was sufficient to overcome the JOA was a question of state law for the trial court, and the court implicitly decided the question in denying the JOA.   This Court must defer to the state court's interpretation of state law.   *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done ... It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Even if the State's circumstantial evidence was insufficient to prove Mr. Palmer was 18 at the time of the offenses, Mr. Palmer fails to demonstrate entitlement to relief on his due process claim.   The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."   *In re Winship*, 397 U.S. 358, 364 (1970).   In a challenge to a state criminal conviction under § 2254, a petitioner is entitled to relief on an insufficient evidence claim "if it is

found that upon the record evidence adduced at the trial no rational trier of fact could have found

proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

The record evidence in this case includes both the State's circumstantial evidence of Mr.

Palmer's age, and Mr. Palmer's testimony that his date of birth is "11/18/83" (Doc. 10-7, docket

p. 225).   Construing the evidence in the light most favorable to the State, it was sufficient to

prove that Mr. Palmer was 18 or older at the time of the offenses.[6]   Mr. Palmer therefore has

not demonstrated trial court error resulting in a due process violation.

In sum, Ground Six is procedurally barred from review, and Mr. Palmer has not

established a due process violation.   Accordingly, Ground Six warrants no relief.

**Ground Seven: Petitioner was denied his constitutional rights to due process and a fair trial when the trial judge denied his motion for mistrial**

During trial, after Leslie Bozeman was asked, "[a]t any time did [Mr. Palmer] ever make

any sexual advances at anybody in your home?" she testified, "[a]t one time he did come for me,

but he was drunk at that time."   (Doc. 10-7, docket p. 52).   Next she was asked, "[a]nd what

did he do exactly?"   (*Id*.).   She answered, "[h]e beat on my bedroom door with my children in

the room."   (*Id*.).   Defense counsel then objected and, during a bench conference, moved for a

mistrial (*Id*., docket pp. 52-54).   Counsel argued that a mistrial should be granted because the

testimony concerned prior bad acts unrelated to the crimes for which Mr. Palmer was charged

(*Id*.).   The motion for mistrial was denied (*Id*., docket p. 54).   The objection, however, was

sustained, and the court immediately gave the following curative instruction:

> Ladies and gentlemen, the defendant is not on trial for anything that may or may
> not have occurred between him and the witness.   The jury should disregard any

---

6 The Information indicates that the first four offenses occurred sometime between August 1, 2004 and September 1, 2006, and the last two offenses occurred sometime between September 1, 2005 and September 1, 2006 (Doc. 10-5, docket pp. 110-11).   Accordingly, Mr. Palmer was 20 or older at the time of the offenses.

testimony concerning any transactions or dealings between the defendant and - the witness and disregard any testimony concerning that. We don't have any opportunity to determine the truth or the veracity of any of those kinds of statements, nor is it even relevant to the subject matter in this case, so please disregard that.

(*Id*., docket pp. 54-57).

Mr. Palmer contends that the curative instruction was insufficient to cure the prejudicial harm caused by the testimony, and he was denied due process and a fair trial when the motion for a mistrial was denied. He argues that a mistrial should have been granted because Leslie Bozeman's testimony, together with her testimony that Mr. Palmer said he was gay and that D.B. had a "big one," and D.B's statement that his father and Mr. Palmer were going to pay women for sex, improperly attacked his character, was highly prejudicial, and rendered his trial unfair.

This claim was raised in state court in Mr. Palmer's Amended Initial Brief on direct appeal (Doc. 10-1, docket pp. 34-36). The state appellate court affirmed Mr. Palmer's convictions without a written opinion (*Id*., docket p. 77).

"[A] jury is presumed to follow jury instructions." *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir.1983), *cert. denied*, 464 U.S. 1063 (1984). There is no indication that the jury did not follow the trial court's instruction to disregard Leslie Bozeman's testimony that on one occasion Mr. Palmer came for her while he was drunk and banged on her bedroom door. Moreover, the testimony was not explicit and included no description of sexual activity. At worst, the testimony implicitly indicated that Mr. Palmer may have made a sexual advance on Leslie Bozeman, an adult. That testimony, even coupled with D.B.'s statement that his father and Mr. Palmer were going to pay women to have sex, would not have tended to show that Mr. Palmer more likely committed the sexual batteries on the minor victims.

To establish entitlement to habeas relief under the AEDPA with respect to this claim, Mr.

Palmer would have to establish that the denial of the motion for a mistrial violated a "fundamental principle of justice" under the Fourteenth Amendment.   *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).   Mr. Palmer fails to make this showing.   The trial court swiftly dealt with Leslie Bozeman's improper testimony by giving a curative instruction directing the jury to disregard it.   Moreover, considering D.B.'s detailed and graphic testimony regarding the sexual abuse that was consistent with his prior statement during the CPT interview, the testimony that Mr. Palmer may have made a sexual advance on Leslie Bozeman did not have a "substantial and injurious effect or influence" on the jury's verdict and did not result in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 622–623, 638 (1993) (a petitioner is not entitled to habeas relief unless trial error resulted in actual prejudice).   Mr. Palmer therefore was not denied a fair trial in accordance with the traditional and fundamental standards of due process.

Mr. Palmer has failed to show that the Florida appellate court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or an unreasonable determination of the facts in light of the evidence presented.   Accordingly, Ground Seven warrants no relief.

**Ground Eight: Petitioner received ineffective assistance of trial counsel when his attorney failed to move the court for a mistrial**

**Ground Nine: Petitioner received ineffective assistance of trial counsel when his attorney failed to impeach Det. Lopez during his trial testimony**

In Ground Eight, Mr. Palmer contends that counsel was ineffective in failing to move for a mistrial after the CPT interviewer testified that based on her experience it is not unusual in these cases that the examination of the victim reveals no physical evidence of penetration. According to Mr. Palmer, counsel objected to the testimony, and the objection was sustained. Mr. Palmer asserts that despite the successful objection, counsel also should have moved for a

mistrial and argued that a fair trial was not possible after the jury heard the testimony.

In Ground Nine, Mr. Palmer contends that counsel was ineffective in failing to impeach Detective Lopez with a report Detective Lopez prepared that indicated Mr. Palmer was answering truthfully during an interrogation.   He argues that the report would have impeached Detective Lopez's trial testimony that during the interrogation: 1) he observed that Mr. Palmer's palms were sweating and his mouth was dry; and 2) Mr. Palmer was "trying to think of" answers to Detective Lopez's questions because Mr. Palmer frequently answered the questions with another question.   Mr. Palmer states that Detective Lopez's testimony implied that he was not answering truthfully during the interrogation, and the report would have shown that Detective Lopez had previously stated that he believed Mr. Palmer was answering truthfully during the interrogation.

Mr. Palmer acknowledges that these claims were not exhausted in state court but asserts entitlement to federal review under *Martinez v. Ryan*, 566 U.S. 1 (2012) (Doc. 1, docket p. 27).   *Martinez* recognizes a narrow exception to the exhaustion requirement announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), regarding claims of ineffective assistance of trial counsel.   *Martinez* holds that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."   566 U.S. at 17.   A claim that lacks merit or is wholly without factual support is not "substantial."   *See id*. at 15-16; *see also Allen v. Sec'y, Dep't of Corr.*, 767 F. App'x 786, 790 (11th Cir. 2019) ("[T]o show that an underlying claim is substantial, the petitioner must show that reasonable jurists would debate its merits.") (citing *Hittson v. GDCP Warden*, 759

F.3d 1210, 1269–70 (11th Cir. 2014)).

     *Martinez* does not apply here because Mr. Palmer was appointed counsel who represented him at the evidentiary hearing on his post-conviction motion (see Doc. 10-3, docket p. 20; Doc. 10-4, docket p. 3). Moreover, while post-conviction counsel did not draft the Rule 3.850 motion argued at the evidentiary hearing, counsel could have sought leave to amend Mr. Palmer's *pro se* Rule 3.850 motion to add any meritorious ineffective assistance of trial counsel claims that Mr. Palmer may have omitted from his motion. See Rule 3.850(e), Florida Rules of Criminal Procedure (authorizing amendment of Rule 3.850 motion). Mr. Palmer fails to argue or show that under the Supreme Court's second *Martinez* prong, appointed counsel was ineffective because she failed to raise an ineffective assistance of trial counsel claim that should have been raised.

     *Martinez* likewise does not apply because Mr. Palmer fails to show that his claims of ineffective assistance of trial counsel are "substantial." Regarding Ground Eight, Mr. Palmer contends that counsel should have moved for a mistrial after the following exchange between the prosecutor and the CPT interviewer:

> Q. Okay. And when you are doing your reports and gathering them. And when you're helping with the medical exams in your cases that you've dealt with, is it unusual in cases not to have findings of sexual abuse or trauma?
>
> A. In my?
>
> Q. In the cases you've had.
>
> A. No, ma'am, that's not unusual.
>
> Q. As a matter of fact, in the cases you've had, is it more likely than not not to have findings?
>
> A. Yes, ma'am.

(Doc. 10-7, docket p. 215).

Mr. Palmer argues that the testimony was improper because the CPT interviewer "was never qualified to give this type of opinion. . . ."   (Doc. 1, docket p. 23).   The testimony, however, did not provide an opinion.   Rather, it provided evidence of the CPT interviewer's own past experiences and firsthand observations.   Mr. Palmer fails to argue or show that this testimony was inadmissible under Florida law.   In fact, "[t]here is nothing in the Florida evidence rules that precludes a lay witness from testifying about her past experience."   *Russ v. Dep't of Corr.*, 476 F. App'x 706, 708 (11th Cir. 2012).   Counsel therefore was not ineffective in failing to move for a mistrial because of this testimony.   *See Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir.2008) (counsel is not ineffective for failing to preserve or argue a meritless claim).   Accordingly, Mr. Palmer fails to establish that this claim is "substantial" under *Martinez* to overcome the procedural default.

Regarding Ground Nine, Mr. Palmer contends that counsel was ineffective in failing to impeach the following testimony of Detective Lopez:

Q.      And in those interviews with the defendant, did you were you alone in those interviews with him?

A.      No, I had another detective that was with me.

Q.      Were you in training at this time for this particular division?

A.      Yes, I was.

Q.      And in the interview with Mr. Palmer, during questioning with him, did you notice anything about how his demeanor was or how he was acting?

A.      Yes, I did.   He was -- I recall he was sweating profusely.   He had a very, very dry mouth, cotton mouth, and he seemed to answer a lot of my questions with a question, which is usually a sign of somebody trying to think of an answer before they answer me.

34

Q.      And would that be based on your training and experience that you would recognize that?

A.      Yes, ma'am.

(Doc. 10-7, docket p. 127). That testimony, Mr. Palmer opines, inferred that he was lying during the interrogation.   Mr. Palmer argues that counsel should have used a report, allegedly prepared by Detective Lopez, that indicates Mr. Palmer "was being truthful" during the interrogation.

The report to which Mr. Palmer refers is the Computer Voice Stress Analyzer Report that Mr. Palmer attached to his petition (Doc. 1, docket p. 32).   The report appears to indicate that Mr. Palmer took a "computer voice stress analyzer examination" on November 28, 2006, during which he was asked two questions: 1) "Have you ever had oral sex with []?"; and 2) "Have you ever had anal sex with []?" (*Id*.).[7]   Mr. Palmer responded "No" to each question, and the examiner concluded that in his opinion "James Palmer responded truthfully to the relevant question(s)."   (*Id*.).

Mr. Palmer fails to show that counsel rendered deficient performance in failing to use the report to attempt to impeach Detective Lopez.   Despite Mr. Palmer's unsupported assertion to the contrary, it does not appear that the report was prepared by Detective Lopez.   Rather, it appears the report was prepared and signed by "Detective Terry Roberts, #5291", and submitted to Detective Lopez (*Id*.).   Therefore, because the report did not include a prior statement of Detective Lopez, under Florida law it was not a prior inconsistent statement that could be used to impeach Detective Lopez.   *See Wilcox v. State*, 143 So.3d 359 (Fla.2014) (to impeach a witness by use of a prior inconsistent statement, the prior statement must be both (1) inconsistent with the witness's in-court testimony, and (2) the statement of the witness).   And even if the report

7 The name of the victim is redacted from the report (*Id*.).

had been prepared by Detective Lopez, the statement that Mr. Palmer "responded truthfully" to the two questions during the "computer voice stress analyzer examination" was not inconsistent with his trial testimony that Mr. Palmer's hands were sweating and mouth was dry, and that Mr. Palmer would answer a question by asking another question.[8]  *See id.* ("To be inconsistent, a prior statement must either directly contradict or materially differ from the testimony presented during trial.") (citing *State v. Smith*, 573 So.2d 306, 313 (Fla.1990)).

Mr. Palmer fails to establish that his claims in Grounds Eight and Nine are "substantial" under *Martinez* to overcome the procedural default.   And he cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.   *Schlup*, 513 U.S. at 327.   Because Mr. Palmer satisfies neither exception to procedural default, Grounds Eight and Nine are procedurally barred from review.

Any claims not specifically addressed herein have been determined to be without merit.

It is therefore **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and close this case.

3. This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §

---

[8] Because Detective Lopez interviewed Mr. Palmer twice (see Doc. 1, docket p. 25; Doc. 10-7, docket p. 128), it is not clear that Detective Lopez's testimony pertained to an interview during which Mr. Palmer took the voice stress examination.   Accordingly, Mr. Palmer cannot establish that no objectively competent lawyer would not have used the report to attempt to impeach Detective Lopez.   *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000) (*en banc*) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").   An ambiguous record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.   *Id.*, 218 F.3d, at 1314 n. 15.

2253(c)(2). Mr. Palmer has failed to make this showing. [9] Accordingly, a Certificate of Appealability is **DENIED** in this case.   And because Mr. Palmer is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

    **DONE AND ORDERED** in Tampa, Florida on May 4, 2020.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

SA: sfc
Copies to:
James E. Palmer, *pro se*
Counsel of Record

---

[9]The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.   *See* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts.